# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-1815

_____

Megan Moore

*Plaintiff - Appellant*

v.

Apple Central, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: February 15, 2018
Filed: June 25, 2018

_____

Before LOKEN, BENTON, and ERICKSON, Circuit Judges.

_____

LOKEN, Circuit Judge.

This is an interlocutory appeal under 28 U.S.C. § 1292(b) of an order of the district court[1] dismissing plaintiff Megan Moore's ("Moore") state law claims against defendant Apple Central, LLC ("Apple Central"), as preempted by the remedial

_____

[1]The Honorable P.K. Holmes, III, Chief Judge of the United States District Court for the Western District of Arkansas.

provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a).  See Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004).  Moore initially filed the action in Arkansas state court.  Apple Central removed the action, arguing the district court has federal question jurisdiction under 28 U.S.C. § 1331 based on ERISA preemption, and diversity jurisdiction under 28 U.S.C. § 1332. Moore then filed an Amended Complaint in the district court, asserting diversity jurisdiction over her state law claims.  After ruling that the state law claims are preempted, the district court held the motion to dismiss in abeyance, giving Moore an opportunity to file a Second Amended Complaint asserting claims under ERISA. Moore filed that complaint, which is pending in district court.  Thus, a decision reversing the district court's preemption ruling, as Moore urges, will not deprive the district court of federal jurisdiction.  But this interlocutory appeal will establish whether federal or state law governs the merits of Moore's claims.  Reviewing the issue of ERISA preemption *de novo*, we affirm the district court's order.  See Painter v. Golden Rule Ins. Co., 121 F.3d 436, 438 (8th Cir. 1997) (standard of review), cert. denied, 523 U.S. 1074 (1998).

## I.

Apple Central acquired the Applebee's Neighborhood Grill & Bar in Rogers, Arkansas, and offered its employees a benefits package that included life insurance provided by The Guardian Life Insurance Company of America ("Guardian").  The Amended Complaint alleges that employee James Moore "submitted an enrollment form for voluntary life insurance to Apple as part of its employee benefits plan."  The form, attached as Exhibit A to Moore's state court complaint, reflected that James Moore would have "basic life coverage" equal to 150% of his $62,000 annual salary, and chose "voluntary term life coverage" equal to five times his salary ($310,000). Moore was designated his primary beneficiary. The Amended Complaint alleges that Apple Central then withheld premiums for the voluntary coverage from James Moore's salary until he died on March 12, 2013, but "failed to pay over those

premiums" and forward Moore's application to Guardian. After James Moore's death, Moore filed a proof of claim for life insurance benefits with Guardian. The Amended Complaint alleges that Moore's "claim for the elected voluntary life benefits was denied and it was indicated to Megan Moore that premiums had not been received from Apple." Accordingly, the Amended Complaint alleges, Moore "is left without appropriate insurance overage in the amount of $160,000.00, representing the difference between the elected coverage and the guaranteed benefit voluntarily paid by Guardian."

Moore's Amended Complaint asserts state law claims for breach of contract, negligence, breach of fiduciary duty, and promissory estoppel and seeks actual and punitive damages for Apple Central's "failure to procure" $160,000 of voluntary life insurance coverage under the Guardian policy. Apple Central filed a motion to dismiss, arguing ERISA preempted all of Moore's claims. The district court agreed: Moore's claims "are premised on the existence of an ERISA plan in which [Apple Central] failed to enroll her husband." The plan did not designate a plan administrator so Apple Central, the plan sponsor, was the plan administrator and an ERISA entity. See 29 U.S.C. §§ 1002(16)(A)(ii), (B)(i). Accordingly, the court concluded, Moore's state law claims are preempted. "Allowing state law claims premised on the existence of an ERISA plan to proceed against the plan administrator would affect relations between primary ERISA entities and impact the administration of the plan."

Moore filed a Second Amended Complaint alleging claims under ERISA and then obtained certification from the district court and from this court for her § 1292(b) interlocutory appeal of the district court's preemption ruling. The pending Second Amended Complaint, which is not at issue on appeal, asserts claims against Apple Central and Guardian under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) for wrongful denial of plan benefits, breach of fiduciary duty, and equitable estoppel. Guardian is not a party to this appeal.

"ERISA is a comprehensive legislative scheme that includes an integrated system of procedures for enforcement that are essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." Dakotas & W. Minn. Elec. Indus. Health & Welfare Fund v. First Agency, Inc., 865 F.3d 1098, 1101 (8th Cir. 2017) (quotations omitted), cert. denied, 138 S. Ct. 1285 (2018). As a threshold matter, Moore does not dispute that Apple Central's plan was a covered "employee welfare benefit plan" governed by ERISA. See 29 U.S.C. § 1002(1); 29 C.F.R. § 2510.3-1(a)(2). Indeed, her Amended Complaint alleges that Apple Central offered James Moore voluntary life insurance "as part of its employee benefits plan."

Section 502(a) of ERISA, 29 U.S.C. § 1132(a), sets forth a comprehensive, integrated civil enforcement mechanism that is "a distinctive feature of ERISA." Davila, 542 U.S. at 208. Among other remedies, these provisions allow a plan participant or beneficiary to sue to recover benefits due under the plan and to seek equitable relief for an ERISA fiduciary's breach of fiduciary duty. See 29 U.S.C. §§ 1132(a)(1)(B), (a)(3); Varity Corp. v. Howe, 516 U.S. 489, 507-15 (1996).

> ["]The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. . . .["] Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.

Davila, 542 U.S. at 208-09, quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987). ERISA preempts "'state common law tort and contract actions asserting

improper processing of a claim for benefits' under an ERISA plan." Thompson v. Gencare Health Sys., Inc., 202 F.3d 1072, 1073 (8th Cir. 2000), quoting Pilot Life, 481 U.S. at 43. If the essence of a state law claim "relates to the administration of plan benefits, it falls within the scope of ERISA." Parkman v. Prudential Ins. Co. of Am., 439 F.3d 767, 771-72 (8th Cir. 2006).

The Amended Complaint alleges that Moore's claims are not preempted by ERISA because "no employer-sponsored insurance policy was ever in place from which to claim the benefits sought." The pleadings establish that this is simply not true. The Amended Complaint alleges that Apple Central's failure to enroll James Moore in voluntary term life insurance coverage, while representing that it had done so by withholding premiums, caused Moore to lose voluntary term insurance benefits in the amount of $160,000. Recall that James Moore's enrollment form attached to the complaint showed that he applied for $93,000 in basic, employer-paid coverage and $310,000 in voluntary, employee-paid additional coverage -- all offered within the same ERISA plan. Moore alleges that $160,000 "represent[s] the difference between the elected coverage and the guaranteed benefit voluntarily paid by Guardian." Thus, from the face of the Amended Complaint, it is apparent that Moore was paid plan benefits, a fact the record now confirms. In opposing this interlocutory appeal, Apple Central submitted to the district court an August 2013 letter from Guardian to Moore explaining that it had paid Moore $243,000 in life insurance benefits -- $93,000 in basic benefits and $150,000 in voluntary term coverage. Guardian did not pay the additional $160,000 Moore claims in this lawsuit.[2]

---

[2]Though not before the district court when it dismissed Moore's state law claims, this document is part of the § 1292(b) record on appeal. Moreover, it may be considered under Rule 12(b)(6) because it contains facts related to an alleged breach of contract that are "necessarily embraced by the complaint." Enervations, Inc. v. Minn. Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004).

These undisputed facts establish that Moore's claims for additional plan benefits are within the purview of ERISA's exclusive remedies. As Guardian's payment of benefits confirms, James Moore was a "participant" in Apple Central's employee welfare benefit ERISA plan. See 29 U.S.C. § 1002(7). Moore, as James Moore's designated plan beneficiary, is a person who may bring an action to recover ERISA remedies. See id. §§ 1002(8), 1132(a). The plan's life insurance benefits are funded by Guardian's group policy. Construing its policy, Guardian has paid $243,000 in plan benefits and declined to pay an additional $160,000. If Guardian misapplied the policy, Moore has a claim for plan benefits under § 1132(a)(1)(B) (assuming no other defenses apply). On the other hand, if Guardian properly denied the $160,000 claim because Apple Central as plan administrator failed to properly submit required information, Moore may assert a claim under § 1132(a)(3) alleging that Apple Central breached its fiduciary duty as plan administrator. Recent cases make clear that such a claim may seek the amount of benefits denied as an equitable make-whole or "surcharge" remedy if Apple Central breached its fiduciary duty by failing to obtain voluntary term life coverage James Moore applied and paid for. See Silva v. Metro. Life Ins. Co., 762 F.3d 711, 720-21, 724-25, 728 n. 12 (8th Cir. 2014), applying CIGNA Corp. v. Amara, 563 U.S. 421, 442-44 (2011).

Moore argues her state law claims against Apple Central are not ERISA-preempted because, in Davila's terms, they implicate legal duties independent of Apple Central's ERISA duties. 542 U.S. at 210. We disagree. Moore's "claims implicate no independent legal duty that [Apple Central] owed [and] concern only the way in which [Apple Central] . . . breached [its plan-administrator] duties while administering [James Moore's] benefits." Prince v. Sears Holdings Corp., 848 F.3d 173, 178 (4th Cir. 2017); accord Parkman, 439 F.3d at 771-72. Any promise Apple Central made or duty it owed to procure James Moore's elected voluntary insurance derived from its role as ERISA plan administrator. See 29 U.S.C. §§ 1002(16)(A)(ii), (B)(i); Silva, 762 F.3d at 716 n.8 (describing a plan administrator's fiduciary responsibilities). Indeed, the enrollment form Guardian provided expressly instructed

-6-

Apple Central employees to return the form "to your employer," reflecting Apple Central's role as a primary ERISA entity.

Apple Central's role as ERISA administrator and fiduciary distinguishes this case from our decision in Wilson v. Zoellner, 114 F.3d 713 (8th Cir. 1997), on which Moore heavily relies. In Wilson, the plaintiff sued an independent insurance agent for negligently misrepresenting the coverage offered by the employer's health insurance policy. Id. at 715. We concluded that the claim was not ERISA preempted because it would not "affect[] the relations between primary ERISA entities . . . includ[ing] the employer, the plan, the plan fiduciaries, and the beneficiaries" or "impose new duties on plan administrators." Id. at 718-19 (quotation omitted). Here, Moore's claims affect relations between primary ERISA entities and the scope of Apple Central's duties as plan administrator.

Moore's state law claims against Apple Central are preempted by the exclusive ERISA remedies in 29 U.S.C. § 1132(a). Accordingly, the district court's February 8, 2017 order is affirmed.

_____